# CASES

## ARGUED AND DETERMINED IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT MACON, JUNE TERM, 1857.*

Present—JOSEPH H. LUMPKIN,
CHARLES J. McDONALD, } Judges.
HENRY L. BENNING,

JORDAN WILLIFORD, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] At what time and under what circumstances the Court shall discharge the jury from the further consideration of a criminal case, is a question left pretty much to its own discretion.

[2.] The doctrine that a mis-trial amounts to an acquittal, has long since been exploded.

Indictment for robbery, in Lee Superior Court, before AL-LEN Judge, March Term, 1857.

Jordan Williford was indicted for robbery and put upon his trial on the 31st day of March, 1857, during the regular Term of the Superior Court of Lee county.

After the close of the testimony, argument of counsel and charge of the Court, the jury retired to deliberate upon their verdict, about two hours before sunset. The next morning, when the Court met, the presiding Judge directed the jury to be brought into the Court, and asked them if they had agreed upon a verdict. The jury replied, that they had not. The Court then enquired if they were likely to agree; they replied,

* A portion of the cases of this Term will be found reported in the 22d vol. Georgia Reports.

2

that they were not. The Court then of its own motion, the prisoner objecting thereto, passed the following order:

March Term, 1857. It appearing to the Court that the jury empaneled and sworn to try this case, are unable to agree, it is therefore ordered by the Court that a mis-trial be declared and awarded, and that the jury be discharged.

Whereupon, prisoner's counsel moved that he be discharged and acquitted of the offence for which he was indicted. The Court refused the motion, and prisoner's counsel excepted.

WEST, for plaintiff in error.

EVANS, Sol. Gen., for the State.

*By the Court*—LUMPKIN J. delivering the opinion.

[1.] The jury being charged with this case, deliberated upon it from the afternoon of one day until 8 o'clock the next morning; and being brought into Court without agreeing to a verdict, and stating that they were not likely to agree, the presiding Judge, without the consent and against the objection of defendant's counsel, directed a mis-trial to be entered, and the jury discharged from the further consideration of the case. Did this entitle the defendant to an acquittal from the prosecution?

Anciently the doctrine was much more rigid upon this subject than at present; and the most oppressive, not to say odious, means were resorted to, to force the jury to find a verdict. But the Courts with the advance of civilization, relaxed from this barbarous practice; and the rule next was, that a mistrial might be awarded whenever from Providential cause or otherwise, it became necessary; and this is the principle insisted upon by the defendant's counsel on the present occasion. But the modern cases establish a still further departure from the old practice; and at the present day, the question seems to be left pretty much to the discretion of the Judge, under his responsibility to the country for any abuse

Williford vs. The State of Georgia.

of his authority; and we are not prepared to hold, that this discretion should be otherwise limited. The due dispatch of the business of the Courts, will depend very much upon leaving this discretion untrammeled. In one case, in New York, the jury were discharged after a half hour's deliberation. Here they were out a whole night and a part of the evening and morning of the preceding and succeeding days. Such is the commendable anxiety of the Courts to try offences, that they are not likely to act with hot haste in this matter, knowing as they do, that let it once be understood that juries can be discharged whenever they see fit to state that they are not likely to agree, and a verdict will rarely be rendered in a criminal case.

[2.] As to a mis-trial being tantamount to an acquittal, tha idea has long since been exploded; since the leading case between *Goodwin and the People of New York, in* 18*th Johnson's Reports,* this point has never been seriously pressed upon the Courts.

The record does not disclose, whether the jury were permitted to take their breakfast on the morning of the day, before they were discharged. They should have been allowed this indulgence. The idea of starving a jury into a verdict is against all philosophy. Hungry men are always quarrelsome. Brother Jonathan was feasted and flattered by the Embassador of John Bull into the Clayton-Bulwer Treaty; while the roar of the British Lion would have passed unheeded as the idle winds.

After a jury have been out all night, the Courts should always, after suffering them to partake of refreshments, give them another opportunity to agree upon a verdict. If they then fail, the case may generally be considered as hopeless.

Judgment affirmed!